**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

FRANK MERRIETT WORKMAN,

        Plaintiff,

vs.                                                                   Case No. 3:16-cv-1122-J-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

        Defendant.
_____/

## **OPINION AND ORDER**[2]

### **I. Status**

Frank Merriett Workman ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "Bells [sic] palsy" and "heart problems." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed November 16, 2016, at 99, 108, 119, 128, 262 (emphasis omitted). On October 5, 2012 Plaintiff filed applications for DIB and SSI, alleging an onset disability date of September 15, 2010. Tr. at 108-16 (DIB), 99-107 (SSI). Plaintiff's applications were denied initially, see Tr. at 108-16, 117, 143-48 (DIB); Tr. at 99-

---

[1]     Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed November 16, 2016; Reference Order (Doc. No. 13), entered November 17, 2016.

107, 118, 149-56 (SSI), and were denied upon reconsideration, see Tr. at 119-27, 137, 156-61 (DIB); Tr. at 128-36, 138, 162-67 (SSI).

On January 23, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 42-98. The ALJ issued a Decision on March 23, 2015, finding Plaintiff not disabled through the date of the Decision. Tr. at 26-37.

The Appeals Council then received additional evidence consisting of medical records from St. Vincent's Medical Center. Tr. at 6; see Tr. at 7-8 (records). On July 8, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On September 6, 2016, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes two arguments: 1) "the ALJ did not properly evaluate the opinions of the treating physician[s] and other medical sources in this case[,]" and 2) "the ALJ's medium [residual functional capacity ("RFC")] was not supported by substantial evidence." Plaintiff's Memorandum of Law (Doc. No. 16; "Pl.'s Mem."), filed January 9, 2017, at 10 (first argument) (emphasis and some capitalization omitted), 16 (second argument) (emphasis and some capitalization omitted). On March 20, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 28-37.  At step one, the ALJ determined that "[Plaintiff] has not engaged in substantial gainful activity since September 15, 2010, the alleged onset date." Tr. at 28 (emphasis and citation omitted). At step two, the ALJ found that "[Plaintiff] has the following severe impairments: history of trochanteric bursitis, history of meralgia paresthetica with neuropathic pain, disorders of the spine, history of migraine, cerebrovascular accident and right bell's palsy per history, restless leg syndrome." Tr. at 28 (emphasis and citation omitted).  At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 29 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform medium work as defined in 20 CFR [§§] 404.1567(c) and 416.967(c) except no climbing of ladders, ropes, and scaffolds; no more than occasional climbing of ramps and stairs or balancing; no more than frequent stooping, kneeling, crouching, and crawling; must avoid even moderate exposure to moving machinery; must avoid all exposure to unprotected heights; and no more than a moderate noise intensity level as that term is described in the [Dictionary of Occupational Titles ("DOT")], due to a history of migraines.

Tr. at 29 (emphasis omitted). At step four, the ALJ found that "[Plaintiff] is capable of performing past relevant work as a currency counter, computer operator, and computer programmer . . . ." Tr. at 35 (emphasis omitted). The ALJ then proceeded to make alternative findings regarding the fifth and final step of the sequential inquiry. Tr. at 36-37. At step five, after considering Plaintiff's age ("47 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform," including "hospital cleaner," "dining room attendant," and "hospital food service worker." Tr. at 36-37. The ALJ concluded that "[Plaintiff] has not been under a disability . . . from September 15, 2010, through the date of th[e D]ecision." Tr. at 37 (emphasis and citation omitted).

### **III. Standard of Review**

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ."

-4-

Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The undersigned first sets out the applicable law. Then, the issues raised by Plaintiff are addressed in turn.

### A. General Law

The Regulations establish a "hierarchy" among medical opinions[4] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the

---

[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

-5-

opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[5] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment

---

[5] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

## B. ALJ's Evaluation of the Medical Opinions

### 1. Opinions at Issue

#### a. Treating Physicians (Ravi Yarlagadda, M.D., Jennifer Stone, M.D.)

Dr. Yarlagadda treated Plaintiff, and his diagnosis included headaches, "right merlagia [sic] paresthetica Vs upper lumbar radiculopathy," and "b/l merlagia [sic] paresthetica Vs lumbar plexopathy." Tr. at 346, 348. The administrative transcript contains five treatment notes from Dr. Yarlagadda, spanning November 29, 2012 to July 22, 2013. See Tr. at 344-45, 346-47, 348-49, 372, 373. On November 29, 2012, Plaintiff reported he had "[r]ight leg weakness" and "[felt] like knots in the head." Tr. at 344, 346, 348. On January 25, 2013, Plaintiff reported he had a "burning sensation in the right thigh, which [had] been going on for years." Tr. at 346. In later appointments, Plaintiff indicated the "right thigh symptoms [were] persistent," Tr. at 348, and that "pain [was] persistent," Tr. at 372.

As part of his treatment of Plaintiff, Dr. Yarlagadda instructed Plaintiff to obtain a brain MRI, Tr. at 344, a lumbar spine MRI, Tr. at 346, and electromyography and nerve conduction velocity ("EMG/NCV") studies, Tr. at 348.[6] Dr. Yarlagadda also told Plaintiff to "obtain [an] orthopaedic referral," Tr. at 373, but Plaintiff indicated he was unable to secure orthopaedic treatment "due to insurance reasons," Tr. at 372. Dr. Yarlagadda reported that the brain MRI results showed a "subtle, [non-specific] abnormal signal in the right posterior temporo-parietal region," Tr. at 346, and that the lumbar spine MRI results showed a "disc bulge [at] L-4 [and] L5-SI . . . [and] no e/o[7] nerve root impingement," Tr. at 348. The results of the EMG/NCV study that was performed were "normal" and showed "no electrophysiological evidence of a right lower limb mononeuropathy nor of a lumbosacral radiculopathy." Tr. at 374.

On March 11, 2013, Dr. Yarlagadda partially completed an RFC Questionnaire. See Tr. at 357-58. In this questionnaire, he opined that Plaintiff can occasionally lift only less than ten pounds. Tr. at 358. He further opined that, in an eight-hour workday, Plaintiff: 1) can sit for a total of two to three hours; 2) can stand and walk for a total of one hour; and 3) would need to take thirty-minute breaks every ten to fifteen minutes. Tr. at 357. He concluded Plaintiff is not "physically capable of working an [eight] hour day, [five] days a week[,] [] on a sustained basis[.]" Tr. at 358. Dr. Yarlagadda did not indicate his diagnosis of Plaintiff or Plaintiff's symptoms. See Tr. at 357-58. The administrative transcript reflects that, before

---

[6] The record reflects Dr. Yarlagadda also ordered a cervical spine MRI, which was done on June 19, 2015. See Tr. at 7-8. The record does not contain any treatment notes from Dr. Yarlagadda regarding this MRI. See generally administrative transcript.

[7] The undersigned believes "e/o" is an abbreviation for "evidence of."

-8-

completing this questionnaire, Dr. Yarlagadda had treated Plaintiff on three occasions. See Tr. at 344-49, 372-73.

Dr. Stone treated Plaintiff mainly for neuropathic pain, restless leg syndrome, and meralgia paresthetica. The administrative transcript contains four treatment notes from Dr. Stone, spanning from August 7, 2013 through March 26, 2014. Tr. at 380-81, 382-83, 384-85, 386-87. On December 16, 2014, Dr. Stone completed an RFC Questionnaire. See Tr. at 389-91. In this questionnaire, she indicated her diagnosis of Plaintiff: "[l]ate effect of stroke, peripheral neuropathy, anxiety, [and] [r]estless leg." Tr. at 389. She stated Plaintiff's symptoms are "[p]ain [in] legs [and] low back, weakness [in] legs [and] arms, anxiety, [e]xercise [i]ntolerance, dizziness," and "fatigue." Tr. at 389. She opined Plaintiff can lift less than twenty pounds frequently and twenty pounds occasionally. Tr. at 390. She also opined that, in an eight-hour workday, Plaintiff: 1) can sit a total of four hours; 2) can stand and walk for a total of three hours; and 3) would need to take fifteen- to twenty-minute breaks every one to two hours. Tr. at 389. She concluded Plaintiff is not "physically capable of working an [eight] hour day[,] [five] days a week[,] [] on a sustained basis." Tr. at 390.

The ALJ gave Dr. Yarlagadda's opinion "little weight" because "diagnostic testing as well as examinations do not support his opined limitations." Tr. at 34. The ALJ further noted that the "form[8] is incomplete as [Dr. Yarlagadda] fails to specify the medically determinable impairments resulting in the opined limitations," and that "[Plaintiff] had only seen Dr. Yarlagadda on three occasions when this form was completed (a six-month period)." Tr. at 34. As to Dr. Stone's opinion, the ALJ gave it "little weight" because "the evidence of record

---

[8] The ALJ does not specify what form he is referring to, but the undersigned believes it is the RFC Questionnaire Dr. Yarlagadda completed on March 11, 2013.

-9-

does not document any significant objective/diagnostic findings or substantial exacerbation in symptoms to support her opined severity." Tr. at 34. In explaining the grounds for assigning little weight to both Dr. Yarlagadda and Dr. Stone, the ALJ specifically pointed to: 1) Plaintiff's "generally normal" range of motion findings and treatment notes, 2) the "[EMG/NCV] study show[ing] no evidence of a right lower limb mononeuropathy or evidence of a lumbosacral neuropathy," and 3) Plaintiff's "conservative course of treatment." Tr. at 34.

### b. Examining Physician (Kent T. Braeutigam, M.D.)

On December 20, 2012, Dr. Braeutigam examined Plaintiff at the request of the Social Security Administration. Tr. at 191; see Tr. at 337-41 (medical report). Plaintiff told Dr. Braeutigam that "he is disabled due to 'lack of blood flow to [an] area of his brain.'" Tr. at 337. Plaintiff reported he had "some numbness in his right arm," and "numbness in the top of his right thigh[,] which [had] been persistent for years." Tr. at 337. Dr. Braeutigam noted that Plaintiff had "full range of motion" of the neck and upper extremities; that the "[e]xtensor hallicus strength is normal"; that there is "[n]o muscle atrophy or deformity of the joints"; and that the "cranial nerves [] are intact." Tr. at 338. The Range of Motion Report Form completed by Dr. Braeutigam further shows Plaintiff had normal range of motion for all joints. See Tr. at 339-41. However, Dr. Braeutigam reported Plaintiff has "chronic hypoesthesia over the right thigh." Tr. at 338. Dr. Braeutigam concluded "[t]here was not any evidence of mental type disorder to interfere with [Plaintiff's] concentration and social interaction." Tr. at 338.

The ALJ gave Dr. Braeutigam's opinion "great weight" on the basis that it is "supported by objective medical findings indicating normal ranges of motion, which is

-10-

consistent with [Plaintiff's] course and frequency of conservative treatment discussed [in the Decision], as well as the [ALJ's] finding of non-disability." Tr. at 34.

### c. Non-Examining Physician (Gloria Hankins, M.D.)

On March 28, 2013, Dr. Hankins reviewed Plaintiff's medical records and concluded Plaintiff is not disabled. See Tr. at 122-27, 131-36. She opined Plaintiff can "lift and/or carry" fifty pounds occasionally, and twenty-five pounds frequently. Tr. at 124, 133. She also stated Plaintiff can stand, walk, and sit for a total of six hours in an eight-hour workday. Tr. at 124, 133. She then concluded that "[Plaintiff] demonstrates the maximum sustained work capability for [] medium [work.]" Tr. at 126, 135 (some capitalization and emphasis omitted).

The ALJ gave "substantial weight" to Dr. Hankins's opinion.[9] Tr. at 34. The ALJ explained, "[Dr. Hankins] is a highly qualified physician who is an expert in the evaluation of the medical issues in disability claims under the Social Security Act." Tr. at 34 (citation omitted). According to the ALJ, "[her] opinion is generally consistent with objective findings, the course of conservative treatment, and consistent with the overall record . . . . The medium exertional level is consistent with [Plaintiff's] generally normal range of motion and strength findings, while the postural restrictions are consistent with [Plaintiff's] hip impairment and obesity." Tr. at 34-35.

### 2. Parties' Arguments/Analysis of ALJ's Findings

Plaintiff argues that "the ALJ [did not] have good cause . . . to give little weight to the treating physician[s'] opinions." Pl.'s Mem. at 14. He further asserts that "[t]he ALJ [did] not

---

[9] The ALJ does not refer to Dr. Hankins by name; rather, he refers to her as "the State agency medical consultant." See Tr. at 34. The undersigned believes the ALJ is referring to Dr. Hankins as she is a state agency physician and her medical report is consistent with the ALJ's description of the consultant's opinion. See Tr. at 34.

-11-

point[] to any evidence that is contrary to the treating physician[s'] opinions." Id. at 15. According to Plaintiff, "[the ALJ's] vague statement that diagnostic testing and examinations did not support the opinions is not sufficient." Id. As to the ALJ's finding on the conservative nature of Plaintiff's treatment, Plaintiff states that he "had no insurance to see doctors," and thus contends that "any lack of more extensive evaluation or treatment was not due to [Plaintiff's] condition, but rather to the fact that he had limited medical access." Id. Responding, Defendant contends that "the ALJ's decision to give little weight to the opinions of Dr. Yarlagadda and Dr. Stone was supported by their own treatment notes and diagnostic tests, and the generally successful conservative treatment they provided . . . ." Def.'s Mem. At 11.

As to the ALJ's assessment of Dr. Braeutigam's opinion, Plaintiff asserts that "[i]t was flatly improper to give greater weight to a one-time evaluating physician who had no medical records before him during the evaluation, who did not know [Plaintiff's] various diagnoses, and whose opinion was made before objective testing was done, rather than the treating physician[s'] opinion." Pl.'s Mem. at 14. Plaintiff further contends that "the ALJ did not have proper reason for giving [Dr. Hankins's] opinion more weight tha[n] treating sources' opinions." Id. at 13. Responding, Defendant argues that "Dr. Hawkin's [sic] opinion is supported by the objective medical findings and consistent with the record as a whole, including the evidence submitted after she issued her opinion." Def.'s Mem. at 11.

Upon review, the undersigned finds the ALJ did not err in his assessment of the medical opinions. The ALJ summarized the treatment notes of the treating physicians, Dr. Yarlagadda and Dr. Stone, and determined that the limitations they assigned were inconsistent with their own treatment notes and other medical evidence. In noting this

-12-

inconsistency, the ALJ provided adequate reasons for giving their opinions little weight. See Tr. at 34. Those reasons are supported by substantial evidence in the record. As the ALJ pointed out, the record contains "generally normal range of motion" and strength findings. Tr. at 34; see, e.g., Tr. at 380 (March 26, 2014 note from Dr. Stone stating, "[F]ull range of motion +5 strength, lower extremities with right-sided 4/5 strength, left 5 out of 5 strength"), Tr. at 372 (July 22, 2013 note from Dr. Yarlagadda stating, "[R]ight knee extension, hip flexion and ankle dorsiflexion : 5-/5"), Tr. at 344 (November 29, 2012 note from Dr. Yarlagadda stating, "Muscle strength in upper and lower extremities, right knee extension, hip flexion and ankle dorsiflexiom - 4 +/5, rest of muscle groups 5/5 strength"), Tr. at 339-41 (December 19, 2012 form completed by Dr. Braeutigam showing normal range of motion measurements for all of Plaintiff's joints). Further, the results of the brain MRI, the lumbar spine MRI, and the EMG/NCV study, as well as Dr. Yarlagadda's treatment notes analyzing such results, are inconsistent with the limitations assigned by Dr. Yarlagadda and Dr. Stone. See Tr. 346, 350-51 (brain MRI); 348, 352-53 (lumbar spine MRI); 373-74 (EMG/NCV study).

The ALJ's finding that Plaintiff's treatment has been conservative in nature is also supported by substantial evidence. See Tr. at 34-35. The medical record, including the treatment notes from Dr. Yarlagadda and Dr. Stone, indicates Plaintiff has had mild symptoms that have been successfully controlled by medication. See, e.g., Tr. at 380 (March 26, 2014 note from Dr. Stone indicating that "[Plaintiff] is stable. We'll continue current regimen and recheck in [six] months"), Tr. at 372 (July 22, 2013 note from Dr. Yarlagadda indicating Plaintiff would "f/u[10] as needed"), Tr. at 383 (December 23, 2013 note from Dr.

---

[10] The undersigned believes "f/u" is an abbreviation for "follow up."

Stone indicating that "[Plaintiff] has chronic neuropathic leg pain which has improved with the use of [medication]"), Tr. at 384 (October 25, 2013 note from Dr. Stone indicating that "the pain is much improved in [Plaintiff's] legs and able to function better overall"). Moreover, the ALJ correctly noted that "there are no medical records in the [administrative transcript] from any treating physician after January of 2007 until November of 2012, which is two years after [Plaintiff's] alleged onset date." Tr. at 35 (citations omitted); see generally administrative transcript.

The undersigned finds the ALJ did not err in finding that the limitations assigned by Dr. Yarlagadda and Dr. Stone are inconsistent with the medical record as a whole and with Plaintiff's conservative course of treatment. Thus, the ALJ had "good cause" to discount the opinions of the treating physicians.

As the ALJ appropriately assessed the opinions of Plaintiff's treating physicians, the ALJ did not err in assigning more weight to Dr. Braeutigam's examining opinion and to Dr. Hankins's non-examining opinion on the basis that they are more consistent with the record as a whole. See Tr. at 34, Timmons v. Comm'r of Soc. Sec., 522 F. App'x 897, 905 (11th Cir. 2013) (unpublished) (finding the ALJ did not err in giving great weight to consultative examining physicians' opinions because "they [were] consistent with the medical evidence of record and [were] supported by the record as a whole"), Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (finding the ALJ was justified in relying on a non-examining physician's opinion that was consistent with the evidence, while rejecting a treating physician's opinion that was contrary to the evidence).

## C. ALJ's RFC Determination

The ALJ found that "diagnostic testing as well as consultative examination do not document any objective medical findings that would prevent [Plaintiff] from performing work activity within the [RFC]." Tr. at 35. Plaintiff contends that "[s]ubstantial evidence does not support the finding of medium work." Pl.'s Mem. at 16. Plaintiff correctly states that "[m]edium work requires occasional lifting of up to [fifty] pounds and frequent lifting of [twenty-five] pounds [and] requires standing and walking for a total of [six] hours in an [eight-]hour workday." Id.; see SSR 83-10, 1983 WL 31251 at *6. However, the undersigned finds there is substantial evidence to support the ALJ's finding that Plaintiff can perform these tasks and functions. While the limitations assigned by Dr. Yarlagadda and Dr. Stone are inconsistent with the ALJ's RFC determination, the ALJ assigned little weight to both doctors' opinions and, as established above, the ALJ had good cause for doing so. Dr. Hankins expressly opined Plaintiff is capable of performing the functions and tasks required for medium work, see Tr. at 122-27, 131-36, and nothing in Dr. Braeutigam's evaluation report contradicts the ALJ's RFC determination, see Tr. at 337-41. Thus, the undersigned finds that the ALJ's RFC determination is supported by substantial evidence.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on August 28, 2017.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of record